```
UNITED STATES DISTRICT COURT                           (ECF)
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -:
MELANIE KELLY, as the mother and   :
natural guardian of                :
JUSTIN GRIMALDI, an infant,        : 07 Civ. 1277 (JCF)
                                   :
          Plaintiffs,              :   MEMORANDUM
                                   :   AND  ORDER
     - against -                   :
                                   :
J.C. PENNEY COMPANY and J.C. PENNEY:
CORPORATION,                       :
                                   :
          Defendants.              :
- - - - - - - - - - - - - - - - - -:
```
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Melanie Kelly brings this action as the mother and natural guardian of Justin Grimaldi. She alleges that J.C. Penney Company and J.C. Penney Corporation (collectively "J.C. Penney")[1] were responsible for injuries sustained by her infant son at a J.C. Penney department store in the Bronx. According to the plaintiffs, while Ms. Kelly was pushing Justin in his stroller through the store, the stroller struck an object on the floor, causing Justin to be thrown out. The plaintiff then brought this action, alleging that the accident was caused by J.C. Penney's negligence. The parties have consented to proceed before me for all purposes pursuant to 28 U.S.C. § 636(c). Following the completion of discovery, J.C. Penney has moved for summary judgment pursuant to

---

[1] While J.C. Penney Company and J.C. Penney Corporation are apparently two separate entities, the plaintiffs have not explained the relationship between the two. For simplicity, they will be referred to collectively as J.C. Penney.

1

Rule 56 of the Federal Rules of Civil Procedure.  For the reasons outlined below, the motion is denied.

Background

At approximately 1:00 p.m. on November 4, 2006, Ms. Kelly and her son Justin, then three years old, entered the J.C. Penney store located in the Bay Plaza Mall in order to exchange some clothing. (Deposition of Melanie Kelly ("Kelly Dep.") attached as Exh. F to Affirmation of Thomas G. Darmody dated April 30, 2009 ("Darmody 4/30/09 Aff."), at 13-14, 17).  Ms. Kelly was pushing Justin in a stroller.  (Kelly Dep. at 15).  While the safety belt was not buckled, a tray was in place in front of Justin.  (Kelly Dep. at 16-17).  After completing the exchange of clothing, Ms. Kelly began to exit the store when the front left wheel of the stroller hit an object and stopped abruptly; as a result, Justin fell forward out of the stroller.  (Kelly Dep. at 32-33).

At the time of the accident, Ms. Kelly observed clothes strewn about the floor of the store, but she does not recall whether the wheel of the stroller hit a hanger or a shirt or some other object. (Kelly Dep. at 29).  According to Justin, the obstacle was in fact a hanger.  (Deposition of Justin Grimaldi ("Grimaldi Dep."), attached as Exh. F to Darmody 4/30/09 Aff., at 73).  Ms. Kelly also related that a mass of people had assembled in the aisle near the women's department, forcing her to take a  circuitous route to the exit.  (Kelly Dep. at 23-24, 29-30).  The accident occurred while

she was attempting to avoid this crowd.  (Kelly Dep. at 29).

Immediately after the accident, Ms. Kelly took Justin to Albert Einstein Hospital for treatment.  (Kelly Dep. at 33-34, 59).  Shortly thereafter, he was transferred to Montefiore Children's Hospital where he stayed for three days after emergency surgery on his elbow.  (Kelly Dep. at 60).  He was given a cast, which he wore for six weeks, and he continued to see an orthopedic surgeon on a regular basis.  (Kelly Dep. at 62).  Justin also received physical therapy and saw a Dr. Sawahi, a specialist, to prevent a "problem with his fingers" from developing  (Kelly Dep. at 66).  At first, Ms. Kelly observed that Justin had only limited movement in his left hand, but this condition has improved with physical therapy.  (Kelly Dep. at 69-70).

The plaintiffs initially brought this action in New York State Supreme Court, and J.C. Penney removed it to this Court on the basis of diversity jurisdiction.  J.C. Penney now moves for summary judgment, contending that the plaintiffs cannot establish that the store was unsafe or that J.C. Penney had notice of any hazardous condition.

Discussion

A. Standard for Summary Judgment

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that

there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Andy Warhol Foundation for the Visual Arts, Inc. v. Federal Insurance Co., 189 F.3d 208, 214 (2d Cir. 1999); Tomka v. Seiler Corp., 66 F.3d 1295, 1304 (2d Cir. 1995). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the moving party meets that burden, the opposing party must come forward with "specific facts showing a genuine issue for trial," Fed. R. Civ. P. 56(e), by "a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

In assessing the record to determine whether there is a genuine issue of material fact, the court must resolve all ambiguities and draw all factual inferences in favor of the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Vann v. City of New York, 72 F.3d 1040, 1048-49 (2d Cir. 1995). But the court must inquire whether "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party," Anderson, 477 U.S. at 249 (citation omitted), and grant summary judgment where the nonmovant's evidence is conclusory, speculative, or not significantly probative. Id. at 249-50. "The litigant opposing

summary judgment may not rest upon mere conclusory allegations or denials, but must bring forward some affirmative indication that his version of relevant events is not fanciful." Podell v. Citicorp Diners Club, Inc., 112 F.3d 98, 101 (2d Cir. 1997) (internal quotations and citations omitted); see also Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (a nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"); Goenaga v. March of Dimes Birth Defects Foundation, 51 F.3d 14, 18 (2d Cir. 1995) (nonmovant "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible"). In sum, if the court determines that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (quoting First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 288 (1968)).

    B.   Negligence

In order to prove negligence under New York law,[2] a plaintiff

---

[2] A federal court exercising diversity jurisdiction applies the substantive law of the state in which it is sitting, including that state's conflict of law rules. Klaxon Co. v. Stentor Electric Manufacturing Co., 313 U.S. 487, 496 (1941); Erie Railroad Co. v. Tompkins, 304 U.S. 64, 78 (1938); Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc. 933 F.2d 131, 137 (2d Cir. 1991) "New York applies an 'interest analysis' to its choice of law, under which the law of the jurisdiction having the greatest interest in the litigation controls." Softel, Inc. v. Dragon Medical and Scientific Communications, Inc., 118 F.3d 955, 967 (2d Cir. 1997) (citation omitted).

must demonstrate: (1) the existence of a legal duty that the defendant owes to the plaintiff; (2) a breach of that duty; (3) injury; and (4) a reasonably close causal connection between the breach and the resulting harm.  See Perrin v. Hilton International, Inc., 797 F. Supp. 296, 299 (S.D.N.Y. 1992); Akins v. Glens Falls City School District, 53 N.Y.2d 325, 333, 441 N.Y.S.2d 644, 648 (1981).  Furthermore, in order to establish a prima facie case of negligence for injuries sustained as a result of a hazardous condition, one must prove that the party responsible for the property created the dangerous condition that caused the injuries. See Shy v. City of New York, 266 A.D.2d 275, 276, 699 N.Y.S.2d 423, 424 (2d Dep't 1999); Eddy v. Tops Friendly Markets, 91 A.D.2d 1203, 1203, 459 N.Y.S.2d 196, 197 (4th Dep't), aff'd, 59 N.Y.2d 692, 463 N.Y.S.2d 437 (1983).  It is sufficient to demonstrate that the

---

In a tort case, the significant contacts "are almost exclusively, the parties' domiciles and the locus of the tort." Schultz v. Boy Scouts of America, Inc., 65 N.Y.2d 189, 197, 491 N.Y.S.2d 90, 95 (1985).  "Where the parties are domiciled in different states, the locus of the tort will almost always be determinative in cases involving conduct-regulating laws."  Krock v. Lipsay, 97 F.3d 640, 646 (2d Cir. 1996) (citation omitted); accord Padula v. Lilarn Properties Corp., 84 N.Y.2d 519, 522, 620 N.Y.S.2d 310, 311-12 (1994).  Here, the plaintiff is domiciled in New York, while J.C. Penney is an Delaware corporation with its principal place of business in Texas. (Notice of Removal, ¶¶ 1, 3).  As the laws of negligence regulate conduct, see In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000, 230 F. Supp. 2d 376, 390 (S.D.N.Y. 2002); Richardson v. Michelin North America, Inc., No. 95-CV-0760, 1998 WL 135804, at *4 (W.D.N.Y. March 18, 1998), the law of New York -- where the accident occurred -- governs these claims.

party responsible for maintaining the property had either actual or constructive notice of the condition.  Id.

    C.  Factual Issues in Dispute

To demonstrate its entitlement to summary judgment, J.C. Penney is "required to establish as a matter of law that [it] maintained the property in question in reasonably safe condition and that [it] neither created the allegedly dangerous condition existing thereon nor had actual or constructive notice thereof." Hagin v. Sears, Roebuck and Co., 61 A.D.3d 1264, 1264, 876 N.Y.S.2d 777, 778 (3d Dep't 2009) (quoting Richardson v. Rotterdam Square Mall, 289 A.D.2d 679, 679, 734 N.Y.S.2d 303 (3d Dep't 2001)).

J.C. Penney claims that the plaintiffs cannot establish that the property in question was not maintained in a reasonably safe condition.  (Darmody 4/30/09 Aff., ¶ 17).  In support of this assertion, J.C. Penney relies heavily on the deposition testimony of Senior Loss Prevention Manager Jason Stengel.  (Affirmation of Thomas G. Darmody dated July 2, 2009 ("Darmody 7/2/09 Aff."), ¶ 11).  Mr. Stengel described how loss prevention agents continually search the store on foot for hazardous conditions, monitor video surveillance, and communicate via walkie-talkies.  (Deposition of Jason Stengel ("Stengel Dep."), attached as Exh. 2 to Affirmation of Frank A. Whelan dated June 16, 2009, at 10-14).  J.C. Penney asserts that these measures are sufficient to prevent injuries to customers.  However, Ms. Kelly's testimony about the condition of

the store paints a different picture. Indeed, she described a chaotic scene inside the store, with clothes strewn about the floor and a virtual mob congregated in the women's department. (Kelly Dep. at 22-23). There is thus a genuine issue of fact as to whether the program described by Mr. Stengel was sufficient to ensure that the premises were reasonably safe. Furthermore, Ms. Kelly contends that the floor itself was unsafe at the point where the tile met with the carpet (Complaint, ¶ 19; Kelly Dep. at 25). A defective walking surface could provide an additional basis for finding that the property was not maintained in a reasonably safe condition.

J.C. Penney also claims that the plaintiffs cannot establish that it had actual or constructive notice of a hazardous condition because Ms. Kelly cannot precisely identify the cause of the accident. (Darmody 7/2/09 Aff., ¶ 15). To be sure, there is no evidence that J.C. Penney had actual notice of any specific obstacle with which the stroller collided. However, an issue of material fact exists as to whether J.C. Penney had constructive notice that objects, particularly those that one would expect to find within the store such as hangers, could fall on the floor and pose a hazard to customers.

For a defendant to have constructive notice of a condition, that condition must be visible, apparent, and in existence for a sufficient period of time to permit the defendant to discover it

8

and take corrective action. See Boyko v. Limowski, 223 A.D.2d 962, 964, 636 N.Y.S.2d 901, 903 (3d Dep't 1996). In addition, constructive notice of a hazardous condition may exist if there is actual knowledge of a recurring problem in the area where the accident occurred. See Greco v. Starbucks Coffee Co., No. 05 Civ. 7639, 2006 WL 1982761, at *3 (S.D.N.Y. July 14, 2006). In Greco, for example, the court found that a jury could infer that the defendant's policy of placing mats by the building's doors on rainy days indicated an awareness that the floor became slippery when wet. Id. Moreover, that policy indicated that the defendant understood the importance of mats in ensuring the safety of those who crossed the floor. Id. In this case, Mr. Stengel testified that one of the tasks of loss prevention managers is to identify and pick up hazardous objects on the floor of the store, suggesting that J.C. Penney was aware of recurring problems. (Stengel Dep. at 21-22).

Conclusion

For the reasons set forth above, J.C. Penney's motion for summary judgment is denied. Counsel shall submit a joint pretrial order, proposed voir dire questions, and requested jury instructions within 30 days.

SO ORDERED.

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:    New York, New York
          July 22, 2009

Copies mailed this date:

John L. Buckheit, Esq.
49 North Airmont Road, Suite 100
Suffern, New York  10901

Thomas G. Darmody, Esq.
Mintzer, Sarowitz, Zeris, Ledva, &
     Meyers LLP
39 Broadway, Suite 950
New York, New York  10006

10